**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION**

**KRISSA SAPPINGTON, BY HER FAITHER
AND NEXT FRIEND, SKIPPY SAPPINGTON**                                   **PLAINTIFF**

**V.**                                                        **CASE NO. 3:09-CV-138-MPM-DAS**

**PONTOTOC COUNTY, MISSISSIPPI**                                       **DEFENDANT**

**MEMORANDUM OPINION**

This cause comes before the court on Pontotoc County, Mississippi's ("County") motion for summary judgment. Krissa Sappington has responded in opposition. Having considered the memoranda and record evidence the court is prepared to rule.

Paula Hardwick, mother of plaintiff in this action, was ordered to jail on September 3, 2004. She died in her cell later that day, allegedly from a methadone overdose. After her death, authorities apparently discovered a lethal dose of methadone hidden in her vaginal cavity. Plaintiff brings this wrongful death suit alleging that the County was negligent in refusing to search Hardwick for illegal contraband, refusing to immediately respond when notified of Hardwick's failing condition, and refusing to provide adequate medical attention in violation of 42 U.S.C. §§ 1981 and 1983.

Rule 56 permits summary judgment where the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Burfield v. Brown, Moore & Flint, Inc.*, 51 F.3d 583, 588 (5th Cir. 1995). When ruling on a summary judgment motion, the

1

court must construe the facts in the light most favorable to the nonmoving party and "refrain from making credibility determinations or weighing the evidence." *Coury v. Moss,* 529 F.3d 579, 584 (5th Cir. 2008). "The party seeking summary disposition must demonstrate the absence of a genuine issue of material fact and the appropriateness of judgment as a matter of law." *Union Planters Nat. Leasing, Inc. v. Woods*, 687 F.2d 117, 119 (5th Cir. 1985). The nonmoving party cannot rely on metaphysical doubt, conclusive allegations, or unsubstantiated assertions but rather must show that there is an actual controversy warranting trial. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (internal citations omitted).

The court now turns to Sappington's 1981 claim. "To succeed on a § 1981 claim, a plaintiff must establish (1) that she is a member of a racial minority; (2) that the defendant had intent to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute." *Arguello v. Conoco, Inc.*, 330 F.3d 355, 358 (5th Cir. 2003). (citing *Morris v. Dillard Dep't Stores, Inc.,* 277 F.3d 743, 751 (5th Cir. 2001)).

Sappington, in response to the motion, does not point to any evidence in the record to support this claim. In fact, she does not even address it. Thus, having failed to carry her burden, this claim will be dismissed.

Next, the County takes issue with Sappington's § 1983 claim. "To hold a municipality accountable for a violation of constitutional rights, a plaintiff must show: (1) that the municipal employee violated his clearly established constitutional rights with subjective deliberate indifference; and (2) that this violation resulted from a municipal policy or custom adopted and maintained with objective deliberate indifference." *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 528-29 (5th Cir. 1999).

"Local governing bodies can be sued directly under § 1983… where the alleged unconstitutional action implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035-36 (1978). However, "local governments… may be sued for constitutional deprivations visited pursuant to governmental custom even though such a custom has not received formal approval through the body's official decisionmaking channels. *Id*. at 690-691. "Although not authorized by written law, such practices of state officials could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Id*.

The record evidence available in this case is comprised solely of an affidavit and an expert report based on same. The factual allegations contained in the affidavit follow in full:

> I, Skippy Sappington, have talked with Ms. Felicia Monts on several occasions, the most recent being aproximately two (2) months ago. Ms. Monts maintains that she was in the Pontotoc County Jail with Paula Hardwick sweating and ill while in the cell. She stated that upon the jail staff being notified that Paula Hardwick needed medical attention through pounding on the jail bars/doors and yelling to the staff, that the jail staff told the inmates to let her sleep it off. The cell mates of Paula Hardwick were allowed to go to smoke break and upon returning saw her lying on the floor unconscious.
> I, Skippy Sappington, have talked with Ms. Melissa Prewitt and was told that she also was an anmate in the cell with Paula Hardwick. Ms. Prewitt also stated that she observed Paula Hardwick being ill, the jail staff was notified of this illness, and that they were permitted to go to smoke break to allow Paula Hardwick to "sleep it off".
> Both witnesses, Felicia Monts and Melissa Prewitt, stated to me that it appeared that Paula Hardwick was in medical distress before she collapsed and that the Pontotoc Jail staff was alerted to this. However, their response was to send the inmates on smoke break and allow Paula Hardwick to sleep it off. Upon returning to the cell the inmates discovered Paula Hardwick unconcious and presumably dead. Upon seeing Ms. Hardwick on the floor the inmates began screamed [*sic*] and ran out of the cell before the door shut.

Notwithstanding concerns regarding the admissibility of this testimony, the court finds nothing in this affidavit from which a reasonable juror could conclude that any alleged violation

occurred as a result of an official policy or custom. Rather, this affidavit provides a scant

account of an isolated incident, devoid of any reference to official policy or actions that could be

considered, absent further evidence, to be so permanent and well settled as to constitute a custom

or usage with the force of law. Therefore, Sappington's § 1983 claims will be dismissed because

there is no record evidence to support an official policy or custom subjecting the County to

liability in this case.

Turning now to Sappington's state law claims, Mississippi law provides:

> A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim of any claimant who at the time the claim arises is an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution, regardless of whether such claimant is or is not an inmate of any detention center, jail, workhouse, penal farm, penitentiary or other such institution when the claim is filed.

Miss. Code. Ann. § 11-46-9(1)(m). Sappington contends that this statute is inapplicable to her

claim because her mother, not she, was incarcerated at the time the claim arose. The Mississippi

Supreme Court has squarely addressed this contention:

> Webb and Chambers attempt to circumvent Miss.Code Ann. § 11-46-9(1)(m) by alleging that an action for wrongful death is an independent cause of action; therefore, placing them in a position different from the decedent. However, this Court has found that a wrongful death suit is a derivative action by the beneficiaries, and those beneficiaries, therefore, stand in the position of their decedent. See *Wickline v. U.S. Fid. & Guar. Co.,* 530 So.2d 708, 715 (Miss.1988).
> Webb and Chambers stand in the position of Michael Chambers. Therefore, Webb and Chambers are only entitled to the remedy afforded to Michael Chambers if he had survived. Since § 11-46-9(1)(m) provides him with no remedy, so it also prevents a suit by his heirs. Webb and Chambers are unable to bring a wrongful death suit on behalf of a prisoner who dies while incarcerated. For the aforementioned reasons, we find no reversible error.

*Webb v. DeSoto County*, 843 So. 2d 682, 684 (Miss. 2003). Similarly, because Sappington

stands in the position of Paula Hardwick, she is only entitled to the remedy afforded Hardwick,

which, in this case, is none since Hardwick was incarcerated at the time the claims arose. Accordingly, Sappington's state law claims against Pontotoc County, Mississippi are hereby dismissed.

In light of the foregoing, this case is dismissed. A separate judgment shall issue accordingly.

SO ORDERED, this the 27th day of March, 2013.


**/s/ MICHAEL P. MILLS**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**